UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JAMES A. SIMON, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL NO.  1:09cv301 and 1:10cv58 |
| | ) | |
| SPECIAL AGENT PAUL MUSCHELL, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JAMES A. SIMON, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

OPINION AND ORDER

This matter is before the court on a motion for judgment on the pleadings, filed by

defendants Special Agent Paul Muschell ("SA Muschell"), Special Agent in Charge Alvin Patton

("SAC Patton"), and Special Agent Linda Porter (SA Porter")(collectively "Special Agents"), on

December 17, 2016.  The plaintiffs, James A. Simon ("Simon"), individually and as parent and

guardian of R.S., and the Estate of Denise J. Simon, filed their response on January 20, 2017.

The Special Agents filed their reply on February 6, 2017. For the following reasons, the motion

will be granted.

The procedural history of this case is as follows. On November 6, 2007, IRS employees

conducted a search, pursuant to a federal search warrant, of the residence belonging to James and

Denise Simon, who were suspected of possible violations of the Internal Revenue Code.

Complaint at ¶¶ 13, 18, 30, *James A. Simon  v. Special Agent Paul Muschell,* No. 1:09-CV-301

("Dkt. No. 1") (N.D. Ind. Oct. 29, 2009), Dkt No. 1 ("Complaint"). Simon filed two civil actions

challenging the IRS search. The first civil action sought damages from the Special Agents,

unnamed IRS employees, and others for alleged violations of the Simons' Fourth and Fifth

Amendment rights during the search. *Id.* at ¶¶ 10, 46-72. The second civil action alleged that the

United States was responsible for the officers' alleged negligence during the IRS's tax

investigation of the Simons under the Federal Tort Claims Act ("FTCA"). Complaint, *James A.*

*Simon v. United States*, No. 1:10-CV-058-RL (N.D.Ind. Feb. 19, 2010), FTCA Dkt No 1

("FTCA Complaint").

In April 2010, while the two civil actions were pending, Simon was indicted by a federal

grand jury on twenty-three criminal counts related to the IRS investigation. Indictment at

pp. 2-17, *United States v. Simon*, No. 3:10-CR-56(01) RM (N.D. Ind. April 15, 2010), CR Dkt

No. 1 (hereinafter "Indictment"). This Court consolidated the civil actions and stayed the civil

proceedings pending resolution of the ongoing criminal case. Opinion and Order at pp. 2,

14, Dkt No 40. On November 9, 2010, after a six-day jury trial, Simon was convicted by a jury

of nineteen of the twenty-three felony counts, including filing false federal income tax returns,

failing to file foreign bank account and financial account reports, mail fraud, and fraud involving

federal financial aid. His conviction was affirmed by the Seventh Circuit on August 15, 2013.

Simon has served his sentence.

Simon had filed a Motion to Vacate on November 13, 2014, which was denied on July 5,

2016. Simon appealed the denial of his motion to vacate his criminal sentence on October 24,

2016.  The Seventh Circuit denied Simon's request for certificate of appealability on June 7,

2017, stating that there was no showing of denial of constitutional rights.

This Court lifted its stay of the consolidated civil proceedings for the limited purpose of briefing and disposition of the United States' motion to dismiss the FTCA actions.  On February 24, 2015, this Court dismissed the FTCA Complaint on the ground that there was no waiver of sovereign immunity under the FTCA where Plaintiffs' claims arose out of the assessment or collection of taxes. *See* 28 U.S.C. § 2680(c). Opinion and Order at pg.19, Dkt No 51.

This Court next lifted the stay of the civil proceedings for the limited purpose of allowing the individually-named Special Agents to file a motion for judgment on the pleadings raising a purely legal issue, the Judgment Bar of 28 U.S.C. § 2676. Opinion and Order, pg. 3 Dkt No. 57. After the Special Agents' motion had been briefed, but before a decision was rendered, this Court granted a stay pending a ruling in *Simmons v. Himmelreich*. The Supreme Court held on June 6, 2016, that the dismissal of an FTCA claim against the United States does not bar a subsequent action by the claimant against the same federal employees whose acts gave rise to the FTCA claim. *Simmons v. Himmelreich*,\_\_\_U.S.\_\_\_, 136 S.Ct. 1843 (2016). Accordingly, the Special Agents withdrew their motion for judgment on the pleadings (Dkt 70, November 29, 2016).

As the stay of proceedings entered on December 15, 2015 expired with the Supreme Court's final ruling in *Himmelreich*, the defendants, on December 17, 2016, filed a new Motion for Judgment on the Pleadings, which is presently before this Court. The defendants claim that the Plaintiffs fail to state a claim upon which relief can be granted and that the action is barred

by the qualified immunity of the defendants.[1]  Finally the Defendants claim that all claims

against SAC Patton should be dismissed on the basis that he may not be held liable for damages

based solely on the actions of individuals he supervised. Defendants request the dismissal of all

of the plaintiffs' claims against defendants Muschell, Patton and Porter.

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment

on the pleadings on a ground set forth in Rule 12(b) after the complaint and answer have been

filed.  *Northern Indiana Gun & Outdoor Shows v. South Bend*, 163 F.3d 449, 452 (7th Cir.

1998). In reviewing a motion made pursuant to Rule 12(c) on the ground of failure to state a

claim upon which relief can be granted, the Court applies the same standard that it applies when

reviewing a motion to dismiss made pursuant to Rule 12(b)(6). *Pisciotta v. Old Nat. Bancorp*,

499 F.3d 629, 633 (7th Cir. 2007). Consequently, "[a] court will grant a Rule 12(c) motion only

when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for

relief and the moving party demonstrates that there are no material issues of fact to be resolved."

*Brunt v. Serv. Employees Int'l Union,* 284 F.3d 715, 718–19 (7th Cir. 2002).

In reviewing a 12(c) motion, the Court may consider the contents of the pleadings,

including any attached exhibits. *Northern Indiana Gun & Outdoor Shows*, 163 F.3d at 452. The

---

[1] Defendants also initially argued that plaintiffs' Fourth Amendment claims challenging probable cause to issue the search warrant are barred by *Heck v. Humprey*, 512 U.S. 477 (1994), However, in their reply brief, the defendants noted that they are not "advancing an argument at this time that a finding that the search warrant was invalid would necessarily imply that James Simon's conviction was unlawful...".  *See Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998)(*Heck* does not bar all Fourth Amendment claims for unlawful search and seizure); *Wallace v. City of Chicago*, 440 F.3d 421, 427 (7th Cir. 2006)(many search and seizure claims do not render a conviction invalid because of doctrines like independent source and inevitable discovery).  As it appears that the defendants have abandoned their *Heck* argument, this Court will not address it further.

Court may also take judicial notice of matters of public record, including public court documents, without converting a motion for judgment on the pleadings into a motion for summary judgment. *Harrison v. Deere & Co.*, 533 F. App'x 644, 647 n.3 (7th Cir. 2013); *Hallie v. Wells Fargo Bank, N.A.*, No. 2:12-cv-235, 2013 WL 1835708, *1-2 (N.D. Ind. May 1, 2013); *Winters v. Illinois State Bd. of Elections*, 197 F. Supp. 2d 1110, 1113 (N.D. Ill. 2001). "When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must . . . decide whether it is plausible that plaintiffs have a valid claim for relief." *Diaz-Bernal v. Myers*, 758 F. Supp. 2d 106, 115-16 (D. Conn. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) ("'[The] factual allegations [in the complaint] must be enough to raise a right to relief above the speculative level[.]")

Although well-pled allegations are assumed true for purposes of a Rule 12(b)(6) motion, "allegations [that] are conclusory . . . [are] not entitled to be assumed true." *Iqbal*, 556 U.S. at 681. "The plausibility standard . . . obligates the plaintiff to 'provide the grounds of his entitlement to relief' through more than 'labels and conclusions, and a formulaic recitation of the elements of a cause of action.'" *Diaz-Bernal*, 758 F. Supp. 2d at 116 (quoting *Twombly*, 550 U.S. at 555); *see Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The basic background facts in this case are supported by the record and are not disputed. Since at least January 2007, the Simons were under investigation by the IRS for possible violations of the Internal Revenue Code. Complaint at ¶ 13; *United States v. Simon*, 727 F.3d

682, 683-84 (7th Cir. 2013). On November 2, 2007, IRS SA Muschell submitted an Application and Affidavit for Search Warrant[2]. Complaint at ¶¶ 16, 18; Exhibit B to the Motion to Dismiss the FTCA Complaint, Dkt No 46-2, Application and Affidavit for Search Warrant, *United States of America v. Search of Residence*, No. 1:07-MJ-00048-RBC (N.D. Ind. Nov. 2, 2007), ECF No. 1 (hereinafter "Affidavit"). In the supporting Affidavit, SA Muschell stated that probable cause existed to believe that the Simon residence contained evidence of the following criminal offenses: conspiracy to commit offenses or defraud the United States by violating federal tax laws; willful tax evasion; willful failure to file a federal income tax return; and fraud and false statements. Affidavit, at pp. 17-29. As Plaintiffs admit in the Complaint, SA Muschell "listed in the Affidavit, a number of what he refers to as tax offender characteristics, such as sham transactions; assigned income; shell corporations; concealing income; artificial business losses; and artificial investments . . . ." Complaint, at ¶ 20.15. In fact, SA Muschell stated that it was his belief that "James A. and Denise J. Simon have devised a scheme . . . for the purpose of evading and defeating federal income taxes legally owed by James A. and Denise J. Simon." Affidavit, at p. 17.

On November 2, 2007, United States District Judge Theresa L. Springmann found that SA Muschell's affidavit established probable cause, and issued a warrant authorizing the IRS to search the Simon residence. Complaint at ¶ 18; Search Warrant, *United States of America v.*

---

[2] "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *see also PharMerica Chicago, Inc. v. Meisels*, 772 F. Supp. 2d 938, 947 (N.D. Ill. 2011). Here, the Plaintiffs made numerous references to the Affidavit in the Complaint. *See* Complaint at ¶¶ 16, 20-24, 26-27, 37, 44-45. In addition, the Affidavit is central to Plaintiffs' claims. *Id.* at ¶¶ 47-48, 50, 56. Thus, the Affidavit is considered part of the pleadings. This Court takes judicial notice of the Affidavit.

*Search of Residence*, No. 1:07-MJ-00048-RBC (N.D. Ind. Nov. 7, 2007), ECF No. 5. On

November 6, 2007, IRS personnel, including SAs Muschell and Porter, executed a search of the

Simon residence. Complaint at ¶ 30; *see also* Opinion and Order at pp. 1-3, CR Dkt No 74.

SAC Patton was not present during the search at the Simon residence. Answer, ¶ 12, Dkt No

21(office in Chicago); Complaint, *passim*, Dkt No 1(no reference to SAC Patton's presence at

residence).

On April 15, 2010, a Grand Jury sitting in South Bend, Indiana, returned twenty-three

counts of indictment against Simon, including a count for filing false income tax returns, 26

U.S.C. § 7206(1), failure to file reports of foreign bank and financial accounts ("FBARs"), 31

U.S.C. §§ 5314 & 5322, mail fraud involving private financial aid, 18 U.S.C. § 1341, and fraud

involving federal financial aid, 20 U.S.C. § 1097. Indictment at pp. 1-16.

Simon challenged the validity of the search warrant and accompanying affidavit through

a motion to suppress. By Opinion and Order dated October 8, 2010, Judge Robert L. Miller, Jr.,

denied  Simon's motion to suppress, except he reserved decision with respect to the

reasonableness of the warrant's execution and scheduled a hearing on that issue. Opinion and

Order at pg. 34, CR Dkt No 62. Judge Miller noted that Simon's motion to suppress was based

on a variety of arguments that are repeated in this civil case, including that, SA Muschell's

affidavit contained false and misleading statements of fact and omitted facts that were material to

the probable cause finding; the affidavit didn't establish probable cause for the offenses listed;

the search warrant lacked sufficient specificity, and resulted in a "general search" of the Simon

residence, in violation of the Fourth Amendment; the warrant was unreasonable because it

authorized intrusion into the defendant's residence and was issued contrary to guidelines

contained in the Internal Revenue Service Manual for search and seizure; and, the warrant was executed in an unreasonable manner (because the agents allegedly exceeded scope of the warrant and seized unauthorized items). *Id*., pg. 3.

Judge Miller held that the search warrant affidavit "set forth enough facts to lead a responsible person to believe that the search of the residence would produce evidence that Mr. and Mrs. Simon had filed tax returns that were false because they omitted taxable income and that Mr. and Mrs. Simon were required to file 'FBARs' that they hadn't filed." *Id*., pg. 9. Judge Miller further held that the alleged omissions "weren't material to the probable cause finding." *Id*., pg. 13. Judge Miller also held that the warrant, with an attachment specifying what types of documents and other evidence could be seized, was sufficiently particularized and not overbroad. *Id*., pp. 15-16. Finally, Judge Miller determined that even if the agents departed from IRS administrative guidelines in obtaining the warrant and conducting the search, those guidelines did not confer any rights on the target of the search that would render the search unreasonable. *Id.*, pp. 17-18.

Judge Miller then conducted an October 19, 2010 evidentiary hearing to consider Simon's challenges to the reasonableness of the warrant's execution. There, Simon claimed that evidence seized in the November 6, 2007, search should be suppressed because the agents used excessive force by executing the search through eleven armed agents wearing body armor and flak jackets, and conducting the search in the morning when his wife and his minor child were present. In an Opinion and Order dated October 20, 2010, Judge Miller denied the remaining portion of the motion to suppress. Opinion and Order, at pg.5, CR Dkt No 74. Judge Miller found that the agents did not act unreasonably under the Fourth Amendment. He observed that

the agents allowed the child to leave for school, and then, at Mrs. Simon's request, waited about an hour for her attorney to arrive, and allowed Mrs. Simon to consult with her attorney during the day and leave the house for lunch. *Id.*, pg. 2. Judge Miller also recognized that the agents obtained consent from Mrs. Simon to remove some computers and computer-related devices and image them elsewhere in order to limit the disruption to the Simon family. *Id.* Examining the totality of the circumstances and balancing the Simons' need for privacy with the need for the promotion of legitimate governmental interests, Judge Miller held that there was nothing facially unreasonable about the search or the retention of the seized items, and denied the motion to suppress based on the alleged Fourth Amendment violations. *Id.*, pg. 4-5.

As noted above, a jury found Simon guilty on 19 of the 23 counts, including filing false federal income tax returns, failing to file foreign bank account and financial account reports, mail fraud, and fraud involving federal financial aid, but excluding several of the mail fraud counts. *See* Opinion and Order at pp. 1-2, CR Dkt No 139 (Jan. 3, 2011). *See also* Sentencing Memorandum, CR Dkt No 159 (Mar. 29, 2011); Judgment in a Criminal Case at pp. 3-4, 7, CR Dkt No 160 (Mar. 29, 2011). The Seventh Circuit affirmed the conviction on August 15, 2013. *United States v. Simon*, 727 F.3d 682 (7th Cir. 2013). Simon failed to petition for a writ of certiorari with the Supreme Court within ninety days, exhausting his direct appeal rights. Simon was released from prison in June, 2016. *See* Notice of Anticipated Release Date, CR Dkt No 212.

Upon his release from prison, Simon renewed his civil litigation efforts. In his Complaints he has raised three bases for civil damages, all arising out of the search warrant: (1) a claim alleging that the agents acted in violation of the Fourth Amendment in obtaining a search

warrant (Complaint, Count 1, ¶¶ 46-54); (2) a claim alleging that the agents violated the Fourth Amendment in the manner by which they executed the search warrant (Complaint, Count 2, ¶¶ 55-64); and (3) a due process claim under the Fourth and Fifth Amendments alleging that the defendants obtained and executed an improper search warrant," (Complaint, Count 3, ¶¶ 65-72). Specifically, plaintiffs allege in Count 1 that: SA Muschell, intentionally or negligently made false and/or misleading statements in the affidavit in support of the request for a search warrant of plaintiffs' home. *Id.* at ¶ 19; these false and/or misleading statements misled the judge that reviewed the request for a search warrant. *Id.* at ¶ 27; the affidavit was negligently reviewed and/or approved by SA Muschell and other IRS agents prior to being submitted to the court. *Id.* at ¶ 22; several government tax offices failed to review the affidavit for completeness and accuracy. *Id.* at ¶ 23; the defendants improperly, unlawfully, and negligently tendered the request for a search warrant, including SA Muschell's affidavit, when they knew or should have known there was no probable cause to support a search warrant. *Id.* at ¶ 24; and defendants failed to follow several internal IRS regulations during the acquisition and execution of the search warrant for plaintiffs' home. *Id.* at ¶ 25.

In Count 2, plaintiffs allege that that on November 6, 2007, defendant Muschell and unknown agents searched plaintiffs' residence pursuant to the search warrant. *Id.* at ¶ 30. At the initiation of the search warrant, only R.S., the Simons' minor daughter, and Denise Simon were at the Simon residence. *Id.* at ¶ 32. Plaintiff James Simon was not in the United States at that time. *Id.* Despite the fact that neither James Simon nor Denise Simon owned a gun, several IRS agents executing the search warrant wore bulletproof vests and had their guns visible during the search of plaintiffs' home. *Id.* at ¶¶ 33-34. The IRS agents executing the

search warrant allegedly violated IRS procedures by putting R.S., who was ten years old at the time, in harm's way. *Id*. at ¶¶ 35-36.

Count 3 contends that during the search, IRS agent Linda Porter made comments to Denise Simon implying violations of law not addressed in the affidavit or warrant, causing emotional stress and harm to Mrs. Simon. *Id.* at ¶ 37. On November 9, 2007, three days after the execution of the search warrant, Denise Simon committed suicide. *Id*. at ¶ 40. Several hours before her death, Denise Simon wrote a letter expressing her concern regarding the armed IRS agents coming into her home, her concern for her children's safety after the search, and her distrust of the federal government. *Id.* at ¶ 41.

In support of their motion for judgment on the pleadings, the defendants claim that they are entitled to qualified immunity and that the plaintiffs have failed to allege sufficient factual allegations to state a claim and are barred by collateral estoppel.

"[T]he defense [of qualified immunity] is meant to give government officials a right, not merely to avoid 'standing trial,' but also to avoid the burdens of 'such pretrial matters as discovery.'" *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("[Q]ualified immunity is an immunity from suit rather than a mere defense to liability[.]"). For that reason, "qualified immunity questions should be resolved at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). Qualified immunity therefore may be raised in a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Lanigan v. Vill. of East Hazel Crest, Ill*., 110 F.3d 467, 471 (7th Cir.1997) ("[Q]ualified immunity may be raised in a motion to dismiss, but at that stage, we consider only the facts in the complaint which we are obligated to accept as true."); *see also Iqbal*, 556 U.S. at 673 ("[T]he

sufficiency of [the] pleadings is . . . directly implicated by the qualified immunity defense.").

"[Q]ualified immunity . . . shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Iqbal*, 556 U.S. at 672 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Whether a right is clearly established is a question of law for the court to decide." *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995). In the context of a motion to dismiss, "qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood v. Moss*, 134 S. Ct. 2056, 2066-67 (2014).

"[U]ntil a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established." *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991) That is, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014). In that regard, the Supreme Court has admonished courts not to "define clearly established law at a high level of generality . . . since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id*. (internal citation omitted). Indeed, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

With respect to the alleged Fourth Amendment warrant violation related to IRS procedures, the defendants argue that the allegations fail to overcome qualified immunity, as they do not allege the violation of a clearly established Constitutional right. Moreover, the IRS Manual is solely for internal agency use and does not confer any substantive rights on other parties. *United States v. Peters*, 153 F.3d 445, 452 n.9 (7th Cir. 1998).The Court agrees with the defendants on this point.

With respect to the search, the plaintiffs allege that the execution of the search warrant was unreasonable because the Special Agents first failed to take reasonable efforts to determine that the Affidavit was accurate and supported by probable cause and also because the Special Agents used excessive force in executing the warrant.

A search incident to a validly-issued warrant does not violate the Constitution, even when the warrant may contain incorrect information. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). As noted, qualified immunity . . . shields Government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights." *Iqbal*, 556 U.S. at 672 . That is, "qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Wood*, 134 S. Ct. at 2066-67.

The second prong asks whether the constitutional right that the officer allegedly violated was "clearly established" at the time of the incident such that it would "be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "Reasonable notice does not require that there be a case 'fundamentally

similar' to the present case, and indeed an officer can be on notice that his conduct violates constitutional rights even in novel factual circumstances." *Hope v. Peltzer*, 536 U.S. 730, 741 (2002); *see also Narducci v. Moore*, 572 F.3d 313, 318 (7th Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

In the present case qualified immunity applies because the conduct alleged would not constitute the violation of clearly established constitutional law. As Judge Miller found, in light of the pre-existing law concerning execution of search warrants, the Special Agents would not have been aware that their actions entering the residence and searching for evidence listed in the search warrant were unlawful on November 6, 2007. They entered with a sufficient number of agents to secure the premises and were wearing clothing that protected them from potential harm. As the Second Circuit recently explained "there is no clearly established right . . . to be free from the deployment of a tactical team in general." *Terebesi v. Torreso*, 764 F.3d 217, 233 (2d Cir. 2014). The agents did not restrain Mrs. Simon, but allowed her to meet with her attorney, go to lunch and have private discussions with her attorney sitting in her car.

Plaintiffs, in their response brief, argue that they have alleged facts in their complaint that necessitate a closer look at the facts and that they should be allowed to conduct discovery and revisit the question of qualified immunity at a later stage. Clearly, plaintiffs misunderstand the nature of the doctrine of qualified immunity. As noted above, qualified immunity provides immunity *from suit*.

Moreover, as noted in the recent case of *Green v. Newport*, No. 16-1536, 7th Cir. Aug. 22, 2017, the Supreme Court has instructed that "clearly established law should not be defined at a high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (citation and

quotation marks omitted). While a case directly on point is not required, "the clearly established law must be `particularized' to the facts of the case." *Id.* at 551 (citation omitted). The Court has found that "[s]uch specificity is especially important in the Fourth Amendment context, where . . . `it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts.'" *Mullenix*, 136 S. Ct. at 308 (citation and alterations omitted). In the case at bar, Plaintiffs have failed to present any case, even slightly on point, that would show that the clearly established law indicated that the Special Agents were violating the plaintiffs' constitutional rights. Clearly, the allegations of the complaint simply do not raise a Fourth Amendment violation of which these defendants should have known. Accordingly, defendants are entitled to qualified immunity for their actions in executing the search warrant.

Plaintiffs further assert a due process claim arising from the suicide of Denise Simon three days after execution of the search warrant. Plaintiffs allege that "upon information and belief, during the Search, Porter made comments to the decedent that were improper by implying violations of law not specified or addressed in the Affidavit or Warrant causing unnecessary emotional stress and harm to Decedent." Complaint. ¶ 37. Defendants argue that this statement is too vague to pass muster under the specific pleading requirements of *Iqbal*. This Court agrees that the plaintiffs have failed to allege any facts that set forth the existence of a clear due process violation. The facts plead do not have facial plausibility enabling the court to draw a reasonable inference that the defendants are liable for the alleged misconduct. Plaintiffs do not allege what comments were made or how they caused harm to Denise Simon. Moreover, the defendants are entitled to qualified immunity on this claim because Denise Simon's suicide does not implicate a

clearly established constitutional right in 2007.  As noted, Plaintiffs have not alleged that one of the defendants took specific actions that directly caused Denise Simon's death.  Nor have the plaintiffs pointed to any case law suggesting that there is a clearly constitutional right that was implicated by the alleged misconduct.

Next, the defendants claim that plaintiffs claims are barred by the doctrine of collateral estoppel.  Under the doctrine of collateral estoppel or claim preclusion, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153, (1979). However, collateral estoppel applies only when the party against whom the earlier decision is being asserted had a "full and fair opportunity" to litigate the issue in question. *Id*.; *Parklane Hoisery Co., Inc. v. Shore*, 439 U.S. 322, 333-34 (1979) (offensive use of collateral estoppel permitted to bar relitigation of whether a proxy statement was materially false and misleading). Collateral estoppel may apply in a *Bivens* case where the plaintiff had unsuccessfully challenged the same allegedly unconstitutional behavior in a prior criminal case preliminary hearing or motion to suppress. *See Allen v. McCurry*, 449 U.S. 90, 102 (1980)(Issue preclusion applies to bar relitigation of validity of search and seizure in subsequent action brought pursuant to §1983).

Through a motion to suppress brought by his counsel in his criminal case, Simon fully, but unsuccessfully, litigated the claims that there was no probable cause for issuance of the search warrant and that the execution of the search warrant was unreasonable; therefore he is estopped from challenging those decisions in this case.  (Compare Complaint with Motion to Suppress Evidence, CR Dkt No 37; and the Opinion and Order denying motion to suppress in

part, CR Dkt No 62; and Opinion and Order, CR Dkt No 74. Denying, after a hearing, the remaining portion of the motion to suppress). Because the allegations of Fourth and Fifth Amendment violations raised in the suppression motion mirrored those raised in this *Bivens* case and the Court in the criminal case denied the motion to suppress in full, Simon is estopped from challenging those findings in this case. *Guenther v. Holmgreen*, 738 F.2d 879 (7th Cir. 1984) (determining plaintiff was precluded from relitigating the issue of the validity of his arrest because the state court ruling at his preliminary hearing determined the officers had probable cause to arrest him); *Donovan v. Thames*, 105 F.3d 291, 297-98 (6th Cir. 1997) (determining suppression hearing did not bar excessive force claim but it did bar relitigation of the validity of arrest because the state court ruling determined the officer had probable cause to arrest plaintiff); *Cameron v. Patterson*, 2012 WL 1204638, at *3 (N.D. Ill. Apr. 10, 2012) (determining that plaintiff was collaterally estopped from pursuing false arrest claim because he had challenged, in his motion to quash arrest and suppress evidence in the state criminal case, whether there was probable cause for the stop); *see also Wright and Miller*, 18B Fed. Prac. & Proc. Civ. 3d § 4474 (West 2004 & Supp.2016).

   As noted earlier, Simon's request to file a motion to vacate sentence was denied by the Seventh Circuit on July 5, 2016. Thus, Simon's appeals have been exhausted and he is barred from pursuing his claims by reason the doctrine of collateral estoppel. Plaintiffs, however, assert that the claims of James A. Simon as Parent and Guardian of R.S. and the Estate of Denise J. Simon are not barred by the doctrine of collateral estoppel. Plaintiffs claim that these plaintiffs were not parties to the criminal case and had no opportunity to litigate the issue in question.

   The law is clear that collateral estoppel may be applied to the claims of third parties who

are in privity with a party to the prior litigation, even when the prior action is criminal in nature. *Studio Art Theatre v. Evansville, Inc. v. Gann*, 76 F.3d 128 (7th Cir. 1996). Where a non-party to a prior action is so closely aligned with the interests of the party to the prior litigation, they may be bound by the ruling from a suppression hearing in the prior litigation. *Id*. at 131; *Allen v. United States*, 964 F.Supp.2d 1239 (D. Nev. 2013)(suppression hearing is grounds for collateral estoppel in subsequent *Bivens* case and non-party to the prior action may be bound; *Beets v. County of Los Angeles*, 669 F.3d 1038, 1046-47(9th Cir. 2012) (criminal conviction precluded a Section 1983 claim brought by the parents of an individual convicted for resisting arrest); *Kray v. City of Tacoma*, 2012 WL 2062397 (W.D. Wash 2012) (brother of a man who was criminally convicted was barred from alleging a Section 1983 claim that would undermine the validity of his brother's conviction).

In the present case, the Estate of Denise Simon and minor R.S. seek to hold the Special Agents individually liable for violations of their constitutional rights allegedly arising from the unlawful issuance and execution of a search warrant at their home. Defendants argue that these two plaintiffs are so closely connected with the criminal defendant[3], Mr. Simon, that they are bound by the decision on the motion to suppress. Defendants point out that Mr. Simon had every reason to vigorously litigate the motion to suppress and this Court notes that the record shows that the motion was, in fact, vigorously litigated. Notably, plaintiffs have not cited any case law in support of their assertion that collateral estoppel should not apply. Plaintiffs merely opine

---

[3] Denise Simon was deceased prior to the issuance of the indictment. However, the Court's sentencing memorandum found that Denise was a "knowing partner" in the tax fraud scheme. Thus, it is clear that the interests of the Estate are not substantially different from Mr. Simon's interests.

that it is "contrary to common sense that collateral estoppel would bar the claims of the Plaintiffs in this case." As the law clearly supports the defendants' position, this court holds that the doctrine of collateral estoppel bars all of the plaintiffs' claims.

Next, the defendants argue that SA Patton must be dismissed from this case for lack of personal involvement. It is well established that "[t]o establish a *Bivens* claim, a plaintiff must demonstrate the defendant's direct or personal involvement in the actions that are alleged to have caused the constitutional deprivation." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012); see also Iqbal, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). In that regard, "purpose rather than knowledge is required to impose *Bivens* liability on . . . an official charged with violations arising from his or her superintendent responsibilities." *Iqbal*, 556 U.S. at 677. It has long been held that the doctrine of *respondeat superior* does not apply to *Bivens* cases. Thus to be held individually liable, "a defendant must be 'personally responsible for the deprivation of a constitutional right.'" *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)(quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir.2001) (quotation omitted). Prior to *Iqbal*, a defendant could "be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Chavez*, 251 F.3d at 652. The plaintiffs do not allege that SA Patton had personal responsibility for conducting the search, but allege only that he "had actual knowledge of and acquiescence in Muschell's, Porter's, and Unknown Agents' conduct by adopting and maintaining a practice, custom or policy that contributed to the violation of Plaintiffs' constitutional rights."

In their Complaint, Plaintiffs specifically allege that SAC Patton is the Special Agent in

Charge of Defendant Paul Muschell. *See* Complaint ¶¶ 5, 7. In his duties as the Special Agent in Charge, SAC Patton was responsible for Mr. Muschell's training and supervision. *See id.* at ¶ 7. The Complaint further alleges that as Special Agent in Charge, SAC Patton improperly reviewed and/or approved the Affidavit supporting the request for a search warrant prior to it being submitted to the Court, failed to review said Affidavit for completeness and accuracy, and improperly and unlawfully tendered the Affidavit to the Court, procuring the issuance of the Warrant, when he knew that there was no probable cause for said Warrant. *See id.* at ¶¶ 22-24. Plaintiffs thus conclude that SAC Patton was directly involved in supervising and training agents in their activities here in the state of Indiana and that SAC Patton's supervision and training of SA Muschell led to the constitutional violations at issue.

However, as noted above, a supervisor may not be liable in a *Bivens* action for the conduct of those under him unless he *intended* those actions to occur. *Iqbal*, 655 U.S. at 677. As the defendants note, there are no allegations in the complaint that SAC Patton intended the other Special Agents to act in a way that would have violated Plaintiffs' constitutional rights. Rather, all the Plaintiffs argue is that SAC Patton had knowledge or acquiesced in unspecified practices, customs and polices because he has adopted and maintained practices, customs and/or polices that contribute to the violations. Complaint at ¶¶ 51, 61, 69. Importantly, none of the factual allegations in the complaint assert that SAC Patton acted in a way that would lead a reasonable fact finder to hold that he intended any violation of Plaintiffs' constitutional rights. Accordingly, this Court must dismiss the claims against SAC Patton on this basis also.

<u>Conclusion</u>

On the basis of the foregoing, the defendants' motion for judgment on the pleadings is hereby GRANTED.


Entered: September 13, 2017.


<u>s/ William C.  Lee</u>
William C. Lee, Judge
United States District Court
